# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>   v.<br><br>JEFFREY GOTTO,<br><br>       Defendant. | Civil Action No.<br><br>**Jury Trial Demanded** |

## COMPLAINT

Plaintiff Zurich American Insurance Company ("Zurich") alleges as follows for its Complaint against Jeffrey Gotto ("Gotto"):

## NATURE OF THE ACTION AND BACKGROUND

1. This action arises out of Gotto's failure to comply with certain contractual obligations he owes Zurich.

2. On or about March 31, 2014, Gotto executed a "Wells Fargo Agreement Regarding Trade Secrets, Confidential Information, Non-Solicitation, and Assignment of Inventions" ("Agreement"). (A true and correct copy of the Agreement is attached as Exhibit A). Zurich is a successor in interest to the Agreement as a result of Zurich's purchase of Rural Community Insurance Services from Wells Fargo in April 2016. Gotto became a Zurich employee after the 2016 acquisition and remained subject to the restrictions in the Agreement.

3. Under the Agreement, Gotto sold and/or serviced ("serviced") various Zurich insurance products, services, and customers, and received monetary compensation for his performance in accordance with the terms of the Agreement (i.e. the sale of Zurich products and services, and servicing Zurich customers).

4. Under the Agreement, and in order to perform services on behalf of Zurich, Gotto also received Zurich confidential and proprietary information ("Confidential Information"). The Confidential Information received by Gotto included, but was not limited to, information on Zurich customers, Zurich prospective customers, and Zurich employees, as well as sensitive and proprietary information relating to Zurich's methods, services, pricing, finances, practices, strategies, business plans, agreements, decision-making, systems, technology, policies, procedures, marketing, sales, techniques and processes. (Agreement, § II).

5. Under the Agreement, Gotto promised to not disclose Zurich Confidential Information to anyone not authorized to receive it, and to not use Zurich Confidential Information for any improper purpose. (*Id.*)

6. Furthermore, and upon termination of his relationship with Zurich, Gotto also promised to continue treating Zurich Confidential Information as confidential, not disclose Zurich Confidential Information to anyone not authorized to receive it and return all Zurich Confidential Information to Zurich.[1]

7. Gotto also agreed to certain post-termination restrictive covenants when he signed the Agreement and began working for Zurich. Specifically, Gotto agreed, for a period of one year after his employment with Zurich ended, to not directly or indirectly "solicit, recruit or promote the solicitation or recruitment of any employee or consultant of [Zurich]" or "solicit, participate in or promote the solicitation of any of [Zurich's] clients, customers, or prospective customers" in a manner that would interfere with Zurich's business. (Agreement, § III).

---

[1] Gotto's's duties, responsibilities, and obligations to keep Zurich Confidential Information confidential, only use Zurich Confidential Information on behalf of Zurich, not disclose Zurich Confidential Information to third parties and return all Zurich Confidential Information to Zurich upon termination of his Zurich employment are also stated in the "Agreement Relating to Proprietary Information/Equipment/Work Development" Gotto signed with Zurich on April 1, 2016. (A true and correct copy of this agreement is attached as Exhibit B).

8. Gotto's employment with Zurich terminated on April 26, 2024.

9. As a result, Gotto was (and is) prohibited from using, possessing or accessing Zurich Confidential Information after April 26, 2024.

10. He is also prohibited from soliciting Zurich customers and/or Zurich employees until April 26, 2025.

11. Upon information and belief, Gotto began working for FARM Inc. ("FARM") at some point during his employment with Zurich (see below) or after his employment with Zurich ended. FARM is an independent insurance company that markets and sells products and services that compete with the Zurich products and services Gotto serviced while employed by Zurich. Hence, FARM is a Zurich competitor.

12. Unfortunately, Gotto ignored and continues to ignore the ongoing duties and obligations he owes Zurich by wrongfully transmitting and retaining Zurich Confidential Information, interfering with Zurich customer relationships by soliciting or attempting to solicit Zurich customers while employed by FARM, and, based upon information and belief, continuing to solicit or attempting to solicit Zurich customers to leave Zurich and join FARM.

13. More specifically, prior to his resignation from Zurich, Gotto transmitted Zurich Confidential Information – namely, Zurich customer information – to his personal email account from his Zurich email account. This Confidential Information included but was not limited to customer documents relating to schedules of insurance and actual production history summaries, all of which is highly confidential and could be used to undermine Zurich's business operations and customer relationships.

14. Gotto had no legitimate business reason for transferring the Zurich Confidential Information to his personal email account. Rather, the only reason Gotto transmitted and retained Zurich Confidential Information was to solicit or attempt to solicit Zurich customers.

15. Moreover, per the terms of the Agreement, Gotto was required to immediately return to Zurich any and all Zurich Confidential Information upon the termination of his employment with Zurich. To date, Gotto has not returned the Zurich Confidential Information he impermissibly retained.

16. When Zurich learned that Gotto transmitted Zurich Confidential Information to his personal email account, Zurich conducted a further investigation into Gotto and learned that he attempted to divert Zurich business to FARM while still employed with Zurich. For example, information obtained by Zurich reveals that Gotto serviced a former Zurich client's claim at FARM while Gotto was still employed by Zurich.

17. Gotto therefore actually began interfering with Zurich customer relationships by soliciting or attempting to solicit Zurich customers on behalf of FARM prior to the termination of his Zurich employment on April 26, 2024.

18. Thus, Gotto breached his duty of loyalty and contractual obligations to Zurich by stealing and retaining Zurich Confidential Information and using the Confidential Information in a manner that is detrimental to Zurich.

19. Gotto's conduct is also violative of the Federal Defend Trade Secrets Act and the Colorado Uniform Trade Secrets Act.

20. Consequently, Zurich now brings suit against Gotto for breach of contract, breach of duty of loyalty for interference with customer relationships, violation of the Federal Defend Trade Secrets Act, and violation of the Colorado Uniform Trade Secrets Act. In doing so, Zurich

asks the Court to award Zurich compensatory and punitive damages for Gotto's intentional and illegal acts.

21. Zurich also requests that the Court enter a preliminary and permanent injunction enjoining Gotto from a) using, accessing, possessing or retaining Zurich Confidential Information and b) soliciting Zurich customers until after April 26, 2025. Zurich further requests that the Court enter an order requiring Gotto to return all Zurich Confidential Information to Zurich.

22. Finally, Zurich requests that this Court award Zurich the attorneys' fees and costs Zurich incurs as a result of Gotto's breach of the Agreement and violation of state and Federal law.

## THE PARTIES AND RELEVANT ENTITIES

23. Zurich American Insurance Company ("Zurich") is a New York corporation engaged in the insurance business with a statutory home office located at 4 World Trade Center, 150 Greenwich Street, New York, NY 10007, and its principal place of business is located at 1299 Zurich Way, Schaumburg, Illinois 60196.

24. Gotto is a resident of Commerce City, Colorado and resides at 12911 East 107th Avenue in Commerce City, Colorado.

25. FARM, Inc. is an independent insurance agency and Zurich competitor with its headquarters at 9865 South Priest Drive, Suite 101 in Tempe, Arizona.

## JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because Zurich's claims against Gotto under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1833, et seq., raise a Federal question. Zurich's remaining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the Federal question that they form part of the same case or controversy.

27. The Court also has diversity jurisdiction under 28 U.S.C. § 1332(a) because this action and controversy is between citizens of different states and exceeds the sum or value of $75,000.00, exclusive of interest and costs.

28. This Court has personal jurisdiction over Gotto because Gotto is a citizen and resident of Colorado, performs services and conducts business in this District, and has purposefully directed his illegal activities in this District. In addition, Gotto substantially performed the terms of the Agreement in this District.

29. Similarly, venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because Gotto resides in this District, does business in this District, and a substantial part of the events giving rise to Zurich's claims occurred in this District.

**COUNT I**
**(Breach of Contract)**

30. Zurich repeats and realleges paragraphs 1 through 29 of the Complaint as if fully set forth herein.

31. On March 31, 2014, Gotto entered into the Agreement. (*See Exhibit A*).

32. Pursuant to Section II of the Agreement, Gotto agreed that Zurich Confidential Information includes, but is not limited to, "a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Agreement, § II)

33. Gotto further agreed that the following are examples of Zurich Confidential Information:

- the names, address, and contact information of [Zurich] customers and prospective customers, as well as any other personal or financial

6

>information relating to any customer or prospect, including, without limitation, account numbers, balances, portfolios, maturity and/or expiration or renewal dates, loans, policies, investment activities, purchasing practices, insurance, annuity policies and objectives;

- any information concerning [Zurich's] operations, including without limitation, information related to its methods, services, pricing, costs, margins, margins and mark up, finances, practices, strategies, business plans, agreements, decision-making, systems, technology, policies, procedures, marketing, sales, techniques, agent information, and processes; and

- any other proprietary and/or confidential information relating to [Zurich's] customers, employees, products, services, sales, technologies, or business affairs. (*Id.*)

34. Pursuant to Section II of the Agreement, Gotto promised to not disclose Zurich Confidential Information to anyone not authorized to receive it, and to not use Zurich Confidential Information for any improper purpose. (*Id.*)

35. Gotto also promised under Section II of the Agreement that, upon termination of his relationship with Zurich, he would continue treating Zurich Confidential Information as confidential, not disclose Zurich Confidential Information to anyone not authorized to receive it, and return all Zurich Confidential Information to Zurich. (*Id.*)

36. Zurich protects its Confidential Information by, among other things: limiting the disclosure and use of this information to only the Zurich employees who need this information to sell Zurich products and services; educating Zurich employees about the requirement and necessity of keeping this information confidential; restricting access to this information by limiting access to computer networks and requiring the use of passwords to access the information; and, as discussed above, requiring employees to execute written agreements that protect against the misuse and improper disclosure of Zurich Confidential Information.

7

37. Indeed, Zurich employees do not have access to Zurich Confidential Information before executing their agreements and only receive Zurich Confidential Information because they promise to a) keep the information confidential and b) only use the information on behalf of Zurich.

38. Hence, Zurich Confidential Information is not available to the general public and is closely guarded by Zurich. Zurich keeps such information strictly confidential in order to, among other things, maintain a competitive advantage in the highly competitive insurance business. Not surprisingly then, Zurich employees do not have access to Zurich Confidential Information before becoming affiliated with Zurich and only have access to Zurich Confidential Information because of their affiliation with Zurich and their promises to keep Zurich Confidential Information confidential.

39. Pursuant to Section III of the Agreement, Gotto agreed, for a period of one year after his employment with Zurich ended, to not directly or indirectly "solicit . . . any employee or consultant of [Zurich]" or "solicit, participate in or promote the solicitation of any of [Zurich's] clients, customers, or prospective customers" in a manner that would interfere with Zurich's business. (Agreement, § III).

40. When Gotto was employed by Zurich, Brandon Kroskob ("Kroskob") was a Zurich customer.

41. Gotto knew that Kroskob was a Zurich customer, and Gotto serviced Kroskob while employed with Zurich.

42. Gotto also possessed and had access to Confidential Information relating to Kroskob (the "Kroskob Confidential Information") while employed by Zurich. The Kroskob Confidential Information was included in the Zurich Confidential Information that Gotto

transmitted to his personal email account in violation of the Agreement and Zurich's internal company policies.

43. Consequently, and under the terms of the Agreement, Gotto was and is prohibited from soliciting Kroskob until after April 26, 2025.

44. He is also prohibited from possessing, using or accessing any Zurich Confidential Information relating to Kroskob.

45. While employed with Zurich, Gotto interfered with Zurich's relationship with Kroskob by utilizing the Kroskob Confidential Information on behalf of FARM and to encourage Kroskob to transfer insurance business to FARM.

46. Moreover, Gotto has not returned the Kroskob Confidential Information and the only reason Gotto would continue to possess the Kroskob Confidential Information is to use the information on behalf of himself and FARM to interfere with the Kroskob-Zurich relationship.

47. Thus, and based upon information and belief, Gotto continues to solicit Kroskob on behalf of himself and FARM in violation of the duties and obligations he owes Zurich.

48. When Gotto was employed by Zurich, Icon Holsteins, LLC ("Icon Holsteins") was a Zurich customer.

49. Gotto knew that Icon Holsteins was a Zurich customer, and Gotto serviced Icon Holsteins while employed with Zurich.

50. Gotto also possessed and had access to Confidential Information relating to Icon Holsteins (the "Icon Holsteins Confidential Information") while employed by Zurich  The Icon Holsteins Confidential Information was included in the Zurich Confidential Information that Gotto transmitted to his personal email account in violation of the Agreement.

51. Consequently, and under the terms of the Agreement, Gotto was and is prohibited from soliciting Icon Holsteins until after April 26, 2025.

52. He is also prohibited from possessing, using or accessing any Zurich Confidential Information relating to Icon Holsteins.

53. Based upon information and belief, while Gotto was employed with Zurich, Gotto interfered with Zurich's relationship with Icon Holsteins by utilizing the Icon Holsteins Confidential Information on behalf of FARM and encouraging Icon Holsteins to transfer insurance business to FARM.

54. Based upon information and belief, Gotto is Icon Holstein's agent at FARM.

55. Gotto has not returned the Icon Holsteins Confidential Information and the only reason he would continue to possess the Icon Holsteins Confidential Information is to use the information on behalf of himself and FARM to interfere with the Icon Holsteins-Zurich relationship.

56. Thus, and based upon information and belief, Gotto continues to solicit Icon Holsteins on behalf of himself and FARM in violation of the duties and obligations he owes Zurich.

57. Zurich is further aware of Gotto interfering with other customer relationships because Zurich discovered email communications in which Gotto forwarded additional confidential customer information (which is "Confidential Information" under the Agreement) from his Zurich email account to his personal email account.

58. Moreover and upon information and belief, Gotto conducted business with Zurich's customers on behalf of FARM through his personal email account prior to Gotto's termination of employment with Zurich in order to hide his activities on behalf of FARM, including his use of Zurich Confidential Information on behalf of FARM.

59. Thus, Gotto used Zurich Confidential Information (namely, confidential customer information) to solicit Zurich customers on behalf of FARM.

60. He also used Zurich Confidential Information to interfere with the relationship between Zurich and its customers.

61. The confidentiality and post-termination restrictions found in the Agreement are reasonable in scope and duration and are necessary to protect Zurich's legitimate business interests in its Confidential Information, goodwill, and longstanding customer relationships.

62. Zurich performed all of the duties and obligations it owes Gotto under the Agreement.

63. Gotto, on the other hand, breached the Agreement by interfering with Zurich's relationship with its customers (including Kroskob and Icon Holsteins), using Zurich Confidential Information on behalf of FARM, and soliciting Zurich customers.

64. Gotto further breached the Agreement by transferring and retaining Zurich Confidential Information, and using Zurich Confidential Information to interfere with Zurich's existing customer relationships both before and after he left Zurich.

65. Zurich incurred, and continues to incur, significant damages as a result of Gotto's breach of his Agreement. Gotto's actions have also damaged Zurich's goodwill, reputation, and legitimate business interests. Zurich's damages are well in excess of $75,000.00.

**COUNT II**
**(Breach of Contract – Injunctive Relief)**

66. Zurich repeats and realleges paragraphs 1 through 65 of the Complaint, as if fully set forth herein.

67. Per the Agreement, Gotto is prohibited from using Zurich Confidential Information for any purpose other than conducting business on behalf of Zurich. Gotto is in breach of the

11

Agreement by transmitting Zurich Confidential Information to his personal email account for purposes other than conducting business on behalf of Zurich.

68. Similarly, the Agreement requires Gotto to immediately return all Zurich Confidential Information to Zurich upon the termination of Gotto's employment with Zurich. Gotto is in further breach of the Agreement by wrongfully retaining Zurich Confidential Information after the termination of his employment with Zurich and now using Zurich Confidential Information on behalf of FARM.

69. The only logical explanation for Gotto's wrongful transmission and retention of Zurich Confidential Information is to use the Zurich Confidential Information for the benefit of himself and FARM in order to interfere with Zurich's customer relationships.

70. Gotto's continued possession of Zurich Confidential Information, combined with Gotto's interference with Zurich customer relationships on behalf of FARM and while still employed with Zurich, demonstrates the need for injunctive relief to prevent Gotto from further interfering with, soliciting, or attempting to solicit Zurich customers.

71. Zurich's success depends in large part on maintaining and fostering its customer relationships and goodwill.

72. In violation of his ongoing duties and obligations to Zurich, Gotto has harmed, and is continuing to harm, Zurich's legitimate business interests in these relationships by retaining and using Zurich Confidential Information to interfere with existing Zurich customer relationships on behalf of himself and FARM.

73. In addition, by retaining and using Zurich Confidential Information on behalf of himself and a Zurich Competitor (FARM), and interfering with Zurich customer relationships both

before and after his Zurich employment ended, Zurich did not receive the full benefit of its bargain with Gotto.

74. Put differently, Zurich complied with all the duties and obligations it owed Gotto under the Agreement. Gotto, on the other hand, failed to comply with all the duties and obligations he owed Zurich under the Agreement when he wrongly transferred and retained Zurich Confidential Information and interfered with multiple Zurich customer relationships on behalf of himself and FARM.

75. Since Zurich did not receive the full benefit of its bargain under the Agreement, in addition to awarding Zurich compensatory damages, Zurich requests that the Court extend the restrictive period in the Agreement to April 26, 2026.

76. Put differently, Zurich requests that, in addition to granting monetary damages, this Court grant injunctive relief against Gotto that, until April 26, 2026, enjoins Gotto from using, possessing, or accessing Zurich Confidential Information, from interfering with Zurich customer relationships, and from soliciting or attempting to solicit Zurich customers.

## COUNT III
**(Breach of Duty of Loyalty)**

77. Zurich repeats and realleges paragraphs 1 through 76 of the Complaint, as if fully set forth herein.

78. As an employee of Zurich, Gotto owed a duty of loyalty to act in Zurich's best interest at all times during his employment.

79. Gotto's duty of loyalty required him, at all times, to act in Zurich's best interest and refrain from, among other things, working for the benefit of another entity in competition with Zurich, and steering customers away from Zurich.

80. Gotto breached his duty of loyalty to Zurich by using Zurich Confidential Information on behalf of himself and a competitor (FARM) while still employed by Zurich.

81. Gotto further breached his duty of loyalty to Zurich by interfering with Zurich's customer relationships by soliciting or attempting to solicit Zurich customers on behalf of FARM while employed with Zurich.

82. As a result of Gotto's breach of his duty of loyalty, Zurich has suffered damages that will be difficult, if not impossible, to ascertain. In any event, the damages to Zurich as a result of Gotto's breach are well in excess of $75,000.00.

## COUNT IV
### (Violation of Federal Defend Trade Secrets Act)

83. Zurich repeats and realleges paragraphs 1 through 82 of the Complaint, as if fully set forth herein.

84. During the course of his relationship with Zurich, Gotto was provided access to substantial amounts of Zurich Confidential Information, including the Confidential Information identified in paragraphs 13, 32, 33, 42, and 50.

85. Zurich Confidential Information is not available to the general public and is closely guarded by Zurich. Zurich keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

86. Zurich Confidential Information is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1833, *et seq.* ("DTSA"), because the information is not generally known outside of Zurich's business, the information is not generally known by employees and others involved in Zurich's business, Zurich takes reasonable measures to guard the secrecy of the information, the information is of great value to Zurich and its competitors, Zurich invested significant amounts of time and money in developing the information, the information cannot

easily be acquired or duplicated by others, and because Zurich continuously uses the information in its business.

87. Gotto was prohibited from using Zurich Confidential Information for an improper purpose while employed with Zurich. (Agreement, § II).

88. Gotto also was required to return Zurich Confidential Information to Zurich immediately upon termination of his employment.

89. Gotto, however, ignored (and continues to ignore) his obligations by maintaining possession of Zurich Confidential Information and using the Confidential Information to unfairly compete with Zurich and interfere with Zurich's customer relationships.

90. Unless restrained, Gotto will continue to use, divulge, disclose, acquire and/or otherwise misappropriate Zurich Confidential Information.

91. Furthermore, actual or threatened misappropriation of Confidential Information may be enjoined under the DTSA.

92. It is axiomatic that if Gotto is actively using Zurich Confidential Information and ignoring the terms of the Agreement and/or his common law obligations to Zurich, then he has no intention of complying with the DTSA.

93. Consequently, Gotto's actions constitute the actual and/or threatened misuse of Zurich Confidential Information.  Injunctive relief against Gotto is therefore appropriate.

94. Zurich therefore requests an order enjoining Gotto from using Zurich Confidential Information and from disclosing Zurich Confidential Information to anyone not authorized to receive the Confidential Information.

95. Zurich further requests an order requiring Gotto to return any and all Zurich Confidential Information to Zurich.

96. Finally, Gotto's misappropriation of Zurich Confidential Information has been willful and malicious, and Zurich has incurred significant damages as a result of Gotto's misappropriation.

97. Gotto's actions have also damaged and/or will damage Zurich's good will, reputation, and legitimate business interests.

98. Zurich is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Gotto's wrongful misappropriation of Zurich Confidential Information.

### COUNT V
### (Violation of Colorado Uniform Trade Secrets Act)

99. Zurich repeats and realleges paragraphs 1 through 98 of the Complaint, as if fully set forth herein.

100. During the course of his relationship with Zurich, Gotto was exposed to and/or otherwise had access to substantial amounts of Zurich Confidential Information.

101. The Confidential Information that Gotto had access to, including the Confidential Information identified in paragraphs 13, 32, 33, 42, and 50 is not available to the general public and is closely guarded by Zurich. Zurich keeps such information strictly confidential in order to maintain an advantage in the highly competitive insurance business.

102. This information is considered a trade secret under the Colorado Uniform Trade Secrets Act ("CUTSA"), Colo. Rev. Stat. § 7-74-101 *et seq.*, because Zurich derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, the information is the subject of reasonable efforts to maintain its secrecy, Zurich derives economic value against its competitors in having this information, and Zurich invested

16

significant amounts of time and money in developing the information. The economic value of the Zurich trade secrets that Gotto had access to under the Agreement is over $500,000.

103. Under the CUTSA, actual or threatened misappropriation of trade secrets may be enjoined. Colo. Rev. Stat. § 7-74-103.

104. Gotto retained Zurich Confidential Information so he could take the Confidential Information to Zurich competitor FARM.

105. Gotto then used Zurich Confidential Information on behalf of himself and FARM to interfere with Zurich customer relationships.

106. Gotto therefore misappropriated, and is misappropriating, Zurich trade secrets by using Zurich Confidential Information to interfere with Zurich customer relationships on behalf of and for the benefit of himself and FARM, and by refusing to return Zurich Confidential Information to Zurich.

107. Gotto's refusal to return Zurich property, including Zurich Confidential Information, constitutes the "threatened" misuse of Zurich trade secrets and injunctive relief is therefore appropriate.

108. Accordingly, Zurich requests that this Court enter an order enjoining Gotto from using any Zurich Confidential Information and disclosing Zurich Confidential Information to anyone not authorized to receive the Confidential Information.

109. Zurich also requests that this Court enter an order requiring Gotto to return any and all Zurich Confidential Information to Zurich.

110. In addition, Gotto's actions have damaged and/or will damage Zurich's goodwill, reputation, and legitimate business interests.

111. Zurich is therefore entitled to compensatory and exemplary damages in an amount to be proven at trial, as well as reasonable attorneys' fees.

112. Finally, Gotto's misappropriation of Zurich's trade secrets was willful and malicious.

113. Zurich therefore requests an award of compensatory damages, exemplary damages, and reasonable attorneys' fees as a result of Gotto's willful and malicious misappropriation of Zurich's trade secrets.

## Jury Demand

114. Zurich, in accordance with Federal Rule of Civil Procedure 38, hereby demands a trial by jury on all issues.

## Prayer for Relief

**WHEREFORE**, Plaintiff Zurich American Insurance Company respectfully requests that this Court:

1. Grant injunctive relief against Gotto that, until April 26, 2026, enjoins Gotto from interfering with Zurich customer relationships;

2. Grant injunctive relief against Gotto that, until April 26, 2026, enjoins Gotto from soliciting Zurich customers;

3. Grant injunctive relief against Gotto that enjoins Gotto from using, possessing, sharing or accessing Zurich Confidential Information;

4. Grant injunctive relief against Gotto that orders Gotto to return all Zurich Confidential Information in his possession, custody or control to Zurich;

5. Enter judgment against Gotto for compensatory damages in an amount to be determined at trial;

6. Enter judgment against Gotto for punitive damages in an amount to be determined at trial;

7. Award Zurich the costs and expenses and interest, including reasonable attorneys' fees, that it incurs as a result of Gotto's breaches of the Agreement, violation of the Federal Trade Secrets Act and violation of the Colorado Uniform Trade Secrets Act; and

8. Award Zurich such other relief as the Court may deem just and proper.

Dated:  May 16, 2024                     **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

                                       BY:    */s/ J. Scott Humphrey*
                                                J. Scott Humphrey
                                                Amakie Amattey (*Admission to D. Colo. Pending*)
                                                71 South Wacker Drive, Suite 1600
                                                Chicago, IL 60606-4637
                                                Telephone:  312-212-4940
                                                shumphrey@beneschlaw.com
                                                aamattey@beneschlaw.com

                                                and

                                                Noelle B. Torrice (*Admission to D. Colo. Pending*)
                                                **BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
                                                1313 N. Market Street, Suite 1201
                                                Wilmington, DE 19801
                                                Telephone:  302-442-7056
                                                ntorrice@beneschlaw.com

                                                *Counsel for Plaintiff Zurich American Insurance Company*